UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA LYNN
CHICORA,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____/

Case No. 2:18-cv-12636

District Judge Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**<ins>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 18), GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 19) and AFFIRM THE
COMMISSIONER'S DECISION</ins>**

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment

(ECF No. 19), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

        Plaintiff, Rhonda Lynn Chicora, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for Disability Insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 18), the

Commissioner's cross-motion for summary judgment (ECF No. 19), Plaintiff's

reply (ECF No. 20), and the administrative record (ECF No. 11).

### A.    Background and Administrative History

#### 1.    Case 2:15-cv-12690-GAD-APP (E.D. Mich.)[1]

Plaintiff alleges her disability began on October 29 or 30, 2011, at the age of

43.  (R. at 209, 217, 220.)  In 2012, Plaintiff filed applications for DI and

supplemental security income (SSI) benefits, preliminarily in April and again in

October.  (R. at 202-216, 217-226.)

The initial applications were denied on June 18, 2012.  (R. at 88-109, 137-

144.)  Thereafter, treating family practitioner Jane I. Castillo, M.D. completed

October 31, 2012 and May 15, 2013 medical source statements (R. at 396-398,

403-407), and licensed psychologist Nathalie Menendes, Psy.D. conducted a

January 10, 2013 consultative examination (CE) (R. at 399-402).

Plaintiff's later applications were denied on January 31, 2013.  (R. at 110-

136, 147-165.)  The disability determination explanations included a mental RFC

assessment by Wayne Hill, Ph.D., who noted various limitations in Plaintiff's

ability to sustain concentration and persistence.  (R. at 118-119, 130-131.)

---

[1] All record citations in this subsection are to the transcript in Plaintiff's prior case.
Case 2:15-cv-12690-GAD-APP (ECF No. 6).

Plaintiff requested a hearing by an ALJ.  (No. 166-167.)  On December 16, 2013, ALJ Patricia McKay held a hearing, at which Plaintiff and a vocational expert (VE), Michael Rosko, testified.  (R. at 36-87.)  On March 22, 2014, ALJ McKay determined that Plaintiff was not disabled under the Social Security Act. (R. at 15-33.)

On June 9, 2015, the Appeals Council denied Plaintiff's request for review. (R. at 1-5, 12-14.)  On July 31, 2015, Plaintiff filed a lawsuit, which challenged the Commissioner's final decision.  The Undersigned's August 18, 2016 report and recommendation addressed Plaintiff's opinion evidence argument, with specific mention of Drs. Castillo, Menendes, and Hill.  *Chicora v. Comm'r of Soc. Sec.*, No. 2:15-CV-12690, 2016 WL 4746223, at *8-*12 (E.D. Mich. Aug. 8, 2016).

On September 12, 2016, the Court entered judgment in favor of Defendant and against Plaintiff.  *Chicora v. Comm'r of Soc. Sec.*, No. 15-CV-12690, 2016 WL 4729661 (E.D. Mich. Sept. 12, 2016) (Drain, J.).

### 2.    Instant case

In July 2015, Plaintiff completed a handwritten Application for Disability Insurance Benefits form, wherein she listed several conditions (ruptured / bulging lumbar discs with radicular pain into buttocks & legs; severe degenerative changes in knees bilaterally; one knee replacement; degenerative changes in both hips; severe depression with hospitalization for overdose) as preventing or having

prevented her ability to work. (R. at 229-235.) Seemingly, this form populated
Plaintiff's August 25, 2015 application for DI benefits. (R. at 236-237, 250-252;
*see also* R. at 253-261.) Her application was denied on December 17, 2015. (R. at
101-114, 119-135.)

On February 12, 2016, Plaintiff requested a hearing by an Administrative
Law Judge ("ALJ"). (R. at 136-137.) On October 10, 2017, ALJ John Loughlin
held a hearing, at which Plaintiff and a vocational expert (VE), Richard Riedl,
testified. (R. at 47-76.) On February 12, 2018, ALJ Loughlin issued an opinion,
which determined that Plaintiff was not disabled within the meaning of the Social
Security Act. (R. at 1077-96.) Importantly, the ALJ noted that "the previous
determinations are final and binding in regards to her applications through to the
date of the prior decision, March 22, 2014[,]" but then concluded that Plaintiff
"was not under a disability within the meaning of the Social Security Act from
March 23, 2014, through the date last insured[,]" *i.e.*, December 31, 2015. (R. at
1081, 1083.)

Plaintiff submitted a request for review of the hearing decision. (R. at 194-
228.) However, on June 29, 2018, the Appeals Council (AC) denied Plaintiff's
request for review. (R. at 1-6.) In so doing, the AC expressly noted that certain
evidence, *i.e.*, the 35 pages of evidence submitted by counsel on April 12, 2018,

post-date the period at issue.  (R. at 2, 5, 7-41.)  Thus, ALJ Loughlin's decision

became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 23, 2018.

### B.    Plaintiff's Medical History

The administrative record contains at least 228 pages of medical records,

which were available to ALJ Loughlin at the time of his February 12, 2018

decision.  (R. at 849-1076, 1095-96 [Exhibits B1F-B13F].)  However,

approximately 204 pages of these exhibits are duplicative of the medical records in

Plaintiff's prior case.[2]  Thus, it seems that ALJ Loughlin had 24 "new" pages of

medical records:  (1) Dr. Castillo's records dated September 2014 through August

2015 (R. at 849-866 [Ex. B1F]); and, (2) the December 10, 2015 CE report of

licensed psychologist Michael Brady, Ph.D.  (R. at 872-877 [Ex. B3F]).

In addition to the 2 medical record exhibits, the ALJ had the benefit of Dr.

Castillo's September 21, 2017 deposition testimony.  (R. at 323-336.)  Moreover, it

appears that, on October 2, 2017, Plaintiff's counsel submitted other records from

---

[2] (*Compare* R. at 867-871 [Ex. B2F], 878-1076 [Exs. B4F - B13F], *with* Case 2:15-cv-12690-GAD-APP (R. at 454-455 [Ex. 9F], 301-450 [Exs. 1F-8F], 468-513 [Ex. 10F].)

the relevant period, such as lab results (R. at 423-437) and records from Dr.

Castillo's office (R. at 492-510, 546-567, 649-662.)[3]

These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

ALJ McKay's March 22, 2014 decision assessed the limitations of sedentary

work, with other exertional, postural, environmental, and mental health limitations.

(R. at 84-85.)  On February 12, 2018, ALJ Loughlin noted that "the previous

determinations are final and binding in regard to her applications through to the

date of the prior decision, March 22, 2014."  (R. at 1081.)

However, ALJ Loughlin further noted that, "[w]ith regard to the period

following the prior ALJ decision," *i.e.*, beginning March 23, 2014, "I recognize

that the record contains new and material evidence."  (R. at 1081.)  Although he

determined that such evidence did not provide "a basis for a substantially different

finding . . . [,]" and although he "incorporated" the prior RFC findings, he also

noted adjustments to Plaintiff's physical and mental health limitations.  (*Id.*)

In sum, pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of

the sequential evaluation process, the ALJ found that Plaintiff had not engaged in

---

[3] At the same time, Plaintiff's counsel submitted records dated 2009 through
March 22, 2014 (R. at 357-413, 438-463, 471-490, 511-545, 567-604, 759-787)
and 2016-2017 (R. at 414-422, 464-470, 608-648, 674-756, 788-842).  Such
records are outside of the relevant period.

substantial gainful activity during the period March 23, 2014, through her date last

insured (DLI) of December 31, 2015.  (R. at 1083.)  At **Step 2**, the ALJ found that,

through the DLI, Plaintiff had the following severe impairments:  degenerative

joint disease (DJD) of the bilateral knees, total right knee replacement,

degenerative disc disease (DDD) of the bilateral sacroiliac joints, DDD of the

lumbar spine, status post hernia repair, obesity, and Depressive Disorder.  (*Id*.)  At

**Step 3**, the ALJ found that, through the DLI, Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id*. at 1083-1085.)  **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[4] and determined that, through the DLI, Plaintiff had the RFC:

> . . . to perform sedentary work . . . except the claimant can
> occasionally push or pull or operate foot controls with the lower
> extremities [*i.e., exertional limitations*].  The claimant can
> occasionally kneel, crouch, stoop, and crawl.  The claimant can
> occasionally climb stairs and ramps, never climb ladders, ropes, and
> scaffolds [*i.e., postural limitations*], and never be exposed to
> vibrations, unprotected heights, and moving machinery parts [*i.e.,
> environmental limitations*].  The claimant must be allowed to alternate
> between standing and sitting every 30 minutes while remaining on
> task [*i.e., exertional limitations*].  The claimant is able to understand
> and remember simple instructions [*i.e., understanding and memory
> limitations*], make simple work-related decisions, and carry out simple

---

[4] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

> instructions [*i.e., sustained concentration and persistence limitations*].
> The claimant can deal with occasional changes in a routine work
> setting [*i.e., adaptation limitations*] and can occasionally deal with
> supervisors, coworkers and the public [*i.e., social interaction
> limitations*].

(*Id*. at 1085-1090.) At **Step 4**, the ALJ determined that, through the DLI, Plaintiff

was unable to perform any past relevant work. (*Id*. at 1090.) At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that, through the DLI, there were jobs that existed in significant

numbers in the national economy that Plaintiff could have performed, such as an

addresser, a production inspector, and an assembler. (*Id*. at 1090-1091.) The ALJ

therefore concluded that Plaintiff had not been under a disability, as defined in the

Social Security Act, at any time from March 23, 2014, through December 31,

2015, the DLI. (*Id*. at 1091.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

#### 1.   Arguments considered and deviations in briefing

While acknowledging that the Court granted Plaintiff leave to file a 31-page brief in support of her motion for summary judgment (ECF No. 16, PageID.1199), the Court further notes that Plaintiff's motion brief does not comply with this Court's local rule governing the format of filed papers, namely the double-spacing requirement (E.D. Mich. LR 7.1(a)(2)). Instead, the line spacing seems to be 1.5, which essentially gives Plaintiff a considerably longer page extension than what was granted. In lieu of striking Plaintiff's brief, the Court will focus its attention on the argument section. (ECF No. 18-1, PageID.1234-1242.) However, the Court wishes to make clear that future non-compliant briefs will be stricken from the record. Had it caught this deviation sooner, the Court would have done so here.

Moreover, "[a] brief supporting a motion or response must, at the beginning, contain a concise statement of the issues presented . . . ." E.D. Mich. LR 7.1(d)(2). This particular requirement is addressed in the Undersigned's practice guidelines for social security cases. *See* www.mied.uscourts.gov. Accordingly, this report only addresses the issues properly presented, *i.e.*, not allegations of error contained

solely within the pre-argument sections of Plaintiff's brief. (ECF No. 18-1, PageID.1212-1233.) The Court should not be left guessing as to which issues are actually on appeal.[5]

In the "Argument" portion of her brief, Plaintiff contends that ALJ Loughlin erred in his consideration of: (1) the opinion evidence; (2) two different listings; and, (3) the VE's testimony as to being off-task and absenteeism. (ECF No. 18-1, PageID.1207-1208, 1211, 1234-1242.) The Commissioner contends that substantial evidence supports the Commissioner's decision. (ECF No. 19.)

## 2. Opinion evidence

As reflected above, the relevant period in Plaintiff's subsequent appeal is March 23, 2014 to December 31, 2015. During this time, Dr. Castillo treated Plaintiff on several occasions. (R. 849-863; *see also* R. at 423-437, 492-510, 546-567, 649-662.) At Step 3 and within the RFC determination, ALJ Loughlin

---

[5] For example, at several points in the pre-argument portion of her brief, Plaintiff labels as erroneous ALJ McKay's opinion and/or ALJ Loughlin's adoption thereof. (*See*, *e.g.*, ECF No. 18-1, PageID.1213-1214, 1220.) If Plaintiff intended for the Court to consider whether ALJ Loughlin misapplied *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) or the related Acquiescence Ruling 98-4(6), it is not among the issues presented. (ECF No. 18-1, PageID.1215, 1220; R. at 1080-1081, 1086.) Likewise, Plaintiff's issues on appeal do not expressly challenge the ALJ's credibility determination. (ECF No. 18-1, PageID.1207-1208.) Instead, Plaintiff mentions "subjective complaints" within her pre-argument review of the "medical evidence of record," more specifically within her discussion of the new evidence from Dr. Castillo. (*Id.*, PageID.1225.)

provided express citations to Dr. Castillo's treatment records, although not always

with attribution, and he also reviewed Dr. Brady's December 10, 2015 CE report

(R. at 872-877) and the December 22-25, 2015 Covenant Healthcare records (R. at

650-654). (R. at 1084, 1087-1088.) Thereafter, ALJ Loughlin's review of the

opinion evidence included assignments of: (a) "little weight" to portions of Dr.

Castillo's September 21, 2017 testimony (R. at 323-336); (b) "some weight" to Dr.

Brady's CE report; and, (c) "less weight" to state agency consultant Mark Garner,

Ph.D.'s December 16, 2015 opinion (R. at 107-108). (R. at 1089-1090.)

### a.    20 C.F.R. §§ 404.1527, 416.927

Plaintiff argues that the ALJ "erroneously discounted the opinion of

Plaintiff's longtime treating physician, Dr. Jane Castillo," in other words, the ALJ

"violated [the] treating physician rule." (ECF No. 18-1, PageID.1234.) The

application(s) currently under review were submitted in 2015. Therefore, the

Court considers whether the ALJ complied with 20 C.F.R. §§ 404.1527, 416.927

("Evaluating opinion evidence for claims filed before March 27, 2017."). This

regulation provides that, regardless of the source, the SSA "will evaluate every

medical opinion" that it receives. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Furthermore, unless the SSA gives controlling weight to a treating source's medical

opinion, the SSA will consider the examining relationship, the treatment

relationship, supportability, consistency, specialization and other factors "in

deciding the weight we give to any medical opinion." *Id.*

Plaintiff correctly notes that ALJ Loughlin "did not give controlling weight

to Dr. Castillo." (ECF No. 18-1, PageID.1235.) More specifically, the ALJ stated:

> I have considered the deposition testimony of Jane Castillo, MD, the
> claimant's primary physician. First, Dr. Castillo opined the claimant
> was totally disabled ([R. 326]), and the severity of the claimant's
> impairments meets listings 1.04 and 12.04 ([R. at 330]). The first
> opinion expresses an ultimate conclusion of disability that, in this
> administrative process, is reserved for the Commissioner of Social
> Security. Additionally, both opinions are inconsistent with the
> physician's own treatment notes and examination findings that reveal
> little functional limitation or physical abnormality as described above.
> As such, I give the opinions of Dr. Castillo little weight.

(R. at 1089.) Thus, having identified Dr. Castillo as Plaintiff's primary physician,

the ALJ considered the examining and treatment relationship factors, and perhaps

even the specialization factor. 20 C.F.R. §§ 404.1527(c)(1),(2),(5),

416.927(c)(1),(2),(5). Also, the ALJ explained that these particular opinions by

Dr. Castillo were inconsistent with certain of Dr. Castillo's own treatment notes

and examination findings, which constitutes consideration of the supportability

and/or consistency factors. 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).[6] In

sum, the ALJ provided "good reasons" for discounting these opinions.

---

[6] Although this particular paragraph of the ALJ's decision does not expressly cite
the allegedly inconsistent record (R. at 1089), the ALJ had previously referred to
benign observations within Dr. Castillo's records (R. at 1084, 1087-1088).

### b. SSR 96-5p

The ALJ discounted Dr. Castillo's testimony that Plaintiff was totally

disabled. (R. at 1089.) In fact, in the cited portion of the deposition testimony, Dr.

Castillo agreed that, in 2013, she continued to believe that Plaintiff "was totally

disabled[.]" (R. at 326.) Here, Dr. Castillo was likely reflecting upon her October

31, 2012 or May 15, 2013 medical source statements regarding physical

impairment / activities. (R. at 326, 1019-1021, 1027-1029.) Even so: **(a)** ALJ

McKay cited each of these opinions in her March 22, 2014 discussion of the

opinion evidence (R. at 89); **(b)** the Commissioner's decision was affirmed by this

Court on September 12, 2016 (*see Chicora*, No. 15-CV-12690, 2016 WL

4729661); and, **(c)** each of these MSSs predates the presently relevant period, *i.e.*,

March 23, 2014 through December 31, 2015. Dr. Castillo's conclusion about

disability was properly discounted as an issue reserved to the Commissioner. *See*

SSR 96-5p ("Medical Source Opinions on Issues Reserved to the Commissioner"),

1996 WL 362206 (July 2, 1996).

### c. The evidence of record and cherry-picking

Within his written decision, ALJ Loughlin represents that he "carefully

considered the testimony at the hearing and all the evidence of record." (R. at

1081.) Moreover, he claims to have arrived at his conclusion – that Plaintiff was

not disabled during the relevant period – "[a]fter careful consideration of all the

evidence[.]" (*Id.*) Throughout the RFC discussion, the ALJ provided express

citations to, *inter alia*:

- Plaintiff's September 16, 2015 function report (R. at 265-272);

- Dr. Castillo's treatment records dated September 2014 to August 2015 (R. at 849-855);

- Dr. Brady's December 10, 2015 CE report (R. at 873-876);

- December 2015 notes from Covenant Healthcare, although not attributed to Dr. Castillo but which appear to have been authored by her (R. at 650-654);

- Dr. Castillo's September 21, 2017 deposition testimony (R. at 326, 330); and,

- The December 2015 opinion of medical consultant Mark Garner, Ph.D. (R. at 108).

(R. at 1086-1089.)

Plaintiff contends that ALJ Loughlin "failed to go through Dr. Castillo's

findings, contained in her deposition, as well as those supported in Exhibits to the

deposition, and her prior medical records." (ECF No. 18-1, PageID.1236.)

However, an ALJ is not obligated to expressly mention each piece of

evidence. *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (an

ALJ "is not required to analyze the relevance of each piece of evidence

individually. Instead, the regulations state that the decision must contain only 'the

findings of facts and the reasons for the decision.'") (quoting 20 C.F.R. § 404.953).

Moreover, of the twelve exhibits marked at the deposition, it seems that only a few are from the relevant period. As best the Court can tell, these are: (a) Dr. Castillo's December 2015 history and physical (Dep. Ex. 5 [R. at 651-654]); (b) Dr. Castillo's December 2015 discharge summary (Dep. Ex. 7 [R. at 650-651]); and, (c) a July 10, 2015 record from occupational therapist specialist Bernard Burk (Dep. Ex. 9). (R. at 323, 327, 329.)[7] Although without attribution to Dr. Castillo, the ALJ expressly cited portions of the December 22-25, 2015 records. (R. at 1088, 650, 652.) Thus, it cannot be said that the ALJ failed to address deposition exhibits attributable to Dr. Castillo from the relevant time period.

Finally, Plaintiff's argues that the ALJ "selects certain dates . . . and selects either findings that were negative on that one day, or, findings that are not documented on each and every occasion the plaintiff as seen by Dr. Castillo[,]" and "took snippets out of a record . . . ." (ECF No. 18-1, PageID.1236; ECF No. 20, PageID.1323.) True, the ALJ may not cherry-pick isolated examination findings to reject a treating physician's opinion. *See Minor v. Comm'r of Soc. Sec.*, 513 F.App'x 417, 435 (6th Cir. 2013) ("the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain") (citing *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F.App'x 771, 777 (6th Cir. 2008) (per curiam) (noting

---

[7] Plaintiff references the July 10, 2015 record in her brief, but the Court has been unable to locate it within the administrative record. (ECF No. 18-1, PageID.1225.)

the ALJ impermissibly "was selective in parsing the various medical

reports"); *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F.App'x 488, 494 (6th Cir.

2011) (noting ALJ's conclusion was "grounded in a myopic reading of the record

combined with a flawed view of mental illness") ).  Yet, the argument that the ALJ

mischaracterized or "cherry-picked" the record is frequently made and seldom

successful, because "the same process can be described more neutrally as weighing

the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).  Here, as

illustrated above, the ALJ stated that he considered all of the evidence, provided

several record citations (including many of Dr. Castillo's treatment records from

the relevant period), and appropriately discounted her testimony, consistent with

20 C.F.R. 404.1527, 416.927 and SSR 96-5p.  *See also Bailey*, 413 F. App'x at 855

(an ALJ "is not required to analyze the relevance of each piece of evidence

individually.").

      **3.**    **Step 3**

          **a.**    **Listing 1.04 ("Disorders of the spine")**

     During the September 21, 2017 deposition, Dr. Castillo testified that, as of

December 31, 2015, Plaintiff met the requirements of Listing 1.04, and Dr. Castillo

explained why that was so.  (R. at 330-331.)  The ALJ decided that Plaintiff's

DDD of the bilateral sacroiliac joints and DDD of the lumbar spine were among

her severe impairments; as such, he considered Listing 1.04 at Step 3.  (R. at 1083-

1084.)  In part, this requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

Listing 1.04(A), www.ssa.gov (last visited Jan. 7, 2020).

While it is not clear whether this particular listing was considered by state

agency consultant Dr. Garner (R. at 108), and although Plaintiff's counsel had

argued otherwise at the administrative hearing (R. at 75), the ALJ nonetheless

determined that "the evidence supports a finding [that] the claimant did not meet

Listing 1.04."  (R. at 1084.)  To support this statement, the ALJ cited:

(i)    Dr. Castillo's March 19, 2015 notes, which reflect that Plaintiff was "[n]egative for myalgias, back pain, [and] joint pain . . . [,]" (R. at 853-854);

(ii)   Dr. Castillo's June 11, 2015 notes, which document "no . . . sensory deficits[,]" and symmetrical deep tendon reflexes (DTR) (R. at 853);[8] and,

(iii)  Dr. Castillo's August 17, 2015 musculoskeletal physical exam, which notes revealed "[n]ormal range of motion[,]" and "no edema or tenderness[,]" (R. at 849).

---

[8] On October 7, 2017, Plaintiff's counsel submitted materials on deep tendon reflexes and osteoarthritis to the SSA.  (*See* R. at 664-670.)

(R. at 1084.) Ultimately, the ALJ concluded that "[i]n the absence of *pertinent objective findings* during the *relevant period*, the record supports a finding that the claimant did not meet listing 1.04." (*Id.* (emphases added).)

Plaintiff argues that ALJ Loughlin's opinion on Listing 1.04 "is not supported by competent material and substantial evidence on the whole record." (ECF No. 18-1, PageID.1236-1241.)[9] More specifically, Plaintiff argues that "each and every aspect of Listing 1.04(A) is met[,]" and that ALJ Loughlin "failed to sufficiently articulate how he reached his conclusion that [Plaintiff's] spinal impairment . . . did not meet or equal 1.04[.]" (ECF No. 18-1, PageID.1237, 1241.) However, aside from this argument's citations to ALJ Loughlin's opinion, Plaintiff's only express citations are to Dr. Castillo's September 21, 2017 deposition testimony. (ECF No. 18-1, PageID.1237-1240; R. at 324-325, 327-331.) Plaintiff's reply on this issue is similarly constructed, as it contains express references to the parties' opening briefs and to Dr. Castillo's deposition testimony.

---

[9] Consistent with the foregoing discussion about properly identified issues on appeal, if Plaintiff is embedding a challenge to the ALJ's credibility assessment within one of her listings arguments (*see* ECF No. 18-1, PageID.1237-1240), this does not somehow revive credibility as an issue presented, nor does the mention of credibility and subjective complaints within Plaintiff's reply (ECF No. 20, PageID.1326). If Plaintiff had intended for the Court to consider the ALJ's treatment of her "excruciating pain" or "pain medication[,]" (ECF No. 18-1, PageID.1237-1239), or her "Chronic Pain Syndrome," (ECF No. 20, PageID.1325), then her statement of issues and related argument should have been clearly marked and, perhaps, included a discussion of how the ALJ errantly applied 20 C.F.R. §§ 404.1529, 416.929 ("How we evaluate symptoms, including pain.").

(*See* ECF No. 20, PageID.1325-1327.)  In other words, Plaintiff does not support this particular listing argument with *express*, *supportive* citations to medical records from the *relevant* period, notwithstanding the claim that her counsel "has spent an enormous amount of space discussing the vast amount of medical evidence that supports a finding that 1.04 is met."  (ECF No. 18-1, PageID.1236.)

Moreover, if Plaintiff had intended to point the Court's attention to one of the deposition exhibits from the relevant time period, such as Dr. Castillo's December 22-25, 2015 records (*see* ECF No. 18-1, PageID.1237), the ALJ expressly considered these records, in part noting the "acute accidental overdose of narcotics and Ambien causing altered mental status[,]" (*see* R. at 1088, 650-654 [Dep. Exs. 5, 7]), and the July 10, 2015 record from occupational therapist Burk does not appear to be part of the record, even though Dr. Castillo testified about it (R. at 329, Dep. Ex. 9).  It is not the Court's role to reweigh this evidence.  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence.  That is solely the province of the Secretary.") (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).[10]

---

[10] If Plaintiff is relying upon the March 22, 2012 lumbar spine MRI (R. at 983, 985, 1009-1010) or the December 8, 2013 lumbosacral spine MRI (R. at 1076 [Dep. Ex. 8]), each of which was addressed in the prior ALJ's decision (R. at 86, 87), and the latter of which Dr. Castillo testified about during her September 21, 2017 deposition (R. at 329), these imaging results are outside of the relevant period.  The same would be true about other deposition exhibits, such as Dr. Castillo's medical source statements dated 2012 and 2013 (R. at 1019-1021 [Dep.

To be sure, the Court senses Plaintiff's attempt to argue that Dr. Castillo's testimony, which occurred "inside" the relevant time period, operates to renew the diagnoses or opinions set forth in matters "outside" the relevant time period but about which she testified.  Notably, at the September 21, 2017 deposition, Plaintiff's counsel asked Dr. Castillo to assume that "the date of disability is December 31st, 2015," and this date was mentioned at other points during the questioning.  (R. at 324, 327, 330-331.)  Also, the pre-argument portion of Plaintiff's brief points to Dr. Castillo's testimony that the condition evident in the October 21, 2016 left shoulder MRI "existed ten months previous[.]"  (R. at 330; ECF No. 18-1, PageID.1225.)  The pre-argument portion of Plaintiff's brief also asserts that her "physical problems existed prior to the Plaintiff's last Hearing and up to the present."  (ECF No. 18-1, PageID.1231.)  Then, within her Listing 1.04 argument, Plaintiff cites to several portions of Dr. Castillo's September 21, 2017 testimony, and contends, "[t]here is no evidence that any of these symptoms disappeared."  (*Id.*, PageID.1238-1239; R. at 328-329, 325.)  Moreover, in reply, Plaintiff contends that Dr. Menendes's findings, which occurred in January 2013,

---

Ex. 1], 1027-1029 [Dep. Ex. 2]), the Menendes report dated 2013 (R. at 1022-1025 [Dep. Ex. 3]), Dr. Castillo's May 16, 2013 progress note (R. at 1053-1056 [Dep. Ex. 4]), the October 21, 2016 left knee MRI (R. at 10-12 [Dep. Ex. 10]), the March 14, 2017 operative report from the left total knee arthroplasty performed by Colleen Linehan, M.D. (*see* R. at 32 [Dep. Ex. 11]), or the October 21, 2016 left shoulder MRI or x-ray (R. at 7-9, 16-18 [Dep. Ex. 12]).

"regardless of the exact time they occurred, are consistent with the temporal findings of Dr. Castillo."  (ECF No. 20, PageID.1324; R. at 1022-1025).  Yet, as noted above, Plaintiff has not shown that the ALJ erroneously discounted the ALJ's treatment of Dr. Castillo's testimony.

> **b.    Listing 12.04 ("Depressive, bipolar and related disorders")[11]**

At Step 3, the ALJ found that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04.  (R. at 1084; *see also* R. at 75, 107-108.)  The ALJ supported this finding with, *inter alia*, his conclusions that Plaintiff was moderately limited in each of the broad functional areas (understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and, adapting or managing herself), each of which expressly cited Plaintiff's September 16, 2015 function report.  (R. at 1084-1085, 262-272.)

---

[11] To be sure, the *pre-argument* portion of Plaintiff's brief contains several references to "anxiety disorder" and Listing 12.06, which concerns "Anxiety and obsessive-compulsive disorders."  (*See*, *e.g.*, ECF No. 18-1, PageID.1207, 1211, 1219, 1223, 1225, 1233.)  Although one such citation to Listing 12.06 occurs in the heading to the argument section, the mental health listing argument is limited to Listing 12.04 (*compare* ECF No. 18-1, PageID.1234, *with* 1241-1242), which is consistent with Plaintiff's counsel's argument at the administrative hearing and ALJ Loughlin's Step 3 narrative (R. at 75, 1084).  Consistent with the aforementioned discussion of properly identified issues for appeal, the Court has limited its consideration to Listing 12.04, which is the only one mentioned in the related argument section.  (*See* ECF No. 18-1, PageID.1241-1242.)

Plaintiff contends that ALJ Loughlin "erred in finding [that she] did not meet or equal Listing 12.04 and, again, violated the treating physician rule." (ECF No. 18-1, PageID.1241.) More particularly, Plaintiff challenges the ALJ's "paragraph B" conclusions, *i.e.*, that Plaintiff was moderately limited in each of the four broad functional areas. (*Id*.; R. at 1084-1085.) However, the sum and substance of this argument is:

> The fact is that the undisputed evidence of record suggests that the Plaintiff's treating physician, Dr. Castillo, the individual psychiatrist and nurse practitioner who saw the Plaintiff after her near death overdose, and the Commissioner's two evaluating psychologists, Drs. Menendes and Brady, all found that the Plaintiff was not functioning at a level that allowed competitive gainful employment.

(ECF No. 18-1, PageID.1241-1242.)

This argument is unavailing, whether it is a Step 3 Listing 12.04 argument or a challenge to the RFC's mental health limitations. As a Listing 12.04 argument, it does not point to medical documentation of Listing 12.04's various requirements, although the introductory portion of Plaintiff's brief does refer to Dr. Castillo's testimony that, prior to December 31, 2015, Plaintiff "met the requirements of listing 12.04[,]" because she met five or more of the requirements in Listing 12.04(A)(1) and had marked limitations in three of the four broad functional areas (Listing 12.04(A)(2)). (ECF No .18-1, PageID.1226-1227; R. at 330.) To the extent Plaintiff relies upon this particular portion of Dr. Castillo's testimony, it is conclusory as to these listing requirements.

As an opinion evidence argument, Plaintiff contends that Dr. Castillo's diagnoses and opinions were not only confirmed by Dr. Menendes on January 10, 2013 (R. at 1022-1025), but were also: (a) confirmed in December 2015 by a psychiatrist at Covenant, seemingly as mentioned in Dr. Castillo's December 2015 notes and/or during Dr. Castillo's September 21, 2017 deposition (*see* R. at 650-654, 329); and, (b) consistent with Dr. Michael Brady's December 10, 2015 opinion (R. at 872-877). (ECF No. 18-1, PageID. 1224-1225.) Dr. Menendes's report is outside of the relevant period, and Plaintiff's argument on Listing 12.04 does not show how the ALJ's treatment of Dr. Castillo's or Dr. Brady's opinions was errant. (ECF No. 18-1, PageID.1241-1242.)[12]

---

[12] The record contains copies of materials regarding mental health care services by family physicians, mental health care services in primary care, and persistent depressive disorder (dysthymia). (R. at 312-321, 844-847.) Plaintiff argues that ALJ Loughlin does not articulate "any reason to discount Dr. Castillo's Opinion regarding her competence and expertise in treating Plaintiff's psychiatric and/or physical problems." (ECF No. 18-1, PageID.1220 n.4.) Aside from the fact that Plaintiff makes this assertion in the pre-argument portion of her brief, and although Plaintiff seems to argue that ALJ Loughlin should have afforded greater weight to Dr. Castillo's mental health limitations, there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F.App'x 216, 222 (6th Cir. 2010)). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Commissioner Social Sec. Admin.*, 414 F.App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)). In fact, Plaintiff states that "[i]n regard to [her] emotional disabilities," ALJ Loughlin "essentially adopted the former ALJ, who failed to consider the opinions of Dr. Castillo because she was only a family doctor." (ECF No. 20, PageID.1323.) Thus, even Plaintiff acknowledges that it

### 4.    Off-task and absenteeism

Although Plaintiff's final argument is framed as a challenge to the ALJ's

Step 5 determination that "there were jobs that existed in significant numbers in the

national economy that the claimant could have performed . . . [,]" (R. at 1090), the

substance of this argument simply rephrases Plaintiff's challenge to the ALJ's

treatment of Dr. Castillo's opinion:

> Dr. Castillo consistently reported that she believed the Plaintiff would
> miss 2, 3 or more days per month.  The facts and medical testimony
> confirm that it was the ALJ's second hypothetical that properly set
> forth the limitations addressed by the Plaintiff.

(ECF No. 18-1, PageID.1242.)  In other words, Plaintiff is asking the Court to find

that substantial evidence supports the conclusion that she would be "off-task, at

least, 25% of the work day[,]" and "absent from work four or more days per

month."  (R. at 74.)

As the hypothetical that ALJ Loughlin posed to the VE in this matter is

essentially identical to the RFC (*compare* R at 71-72, *with* R. at 1085-1086),

Plaintiff's "Step 5" off-task / absenteeism argument is, in reality, a "veiled attack"

on the ALJ's underlying RFC finding.  *See Kirchner v. Colvin*, No. 12-CV-15052,

2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five

---

was *ALJ McKay* who, with reference to Dr. Castillo's October 31, 2012 MSS,
noted that Dr. Castillo's opinion about Plaintiff's depression was "outside the
doctor's area of expertise[.]"  (R. at 89, 1021.)

argument is a veiled attack on the ALJ's underlying RFC finding" because "this is

not a scenario where the ALJ's hypothetical failed to match up to the RFC he

ultimately imposed"); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th

Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is

essentially to partially shift the burden of proof required of a claimant at step four

to the Commissioner.").  At least with respect to this particular argument, the

Commissioner correctly notes that Plaintiff has not identified "any *specific*

evidence to show that she would be off-task or absent to the extent proffered in the

hypothetical question to the VE[.]"  (ECF No. 19, PageID.1318 (emphasis added).)

*In reply*, Plaintiff makes some specific references.  First, she claims that "the

record was replete with reports form Dr. Castillo that the Claimant would miss

more than two days per month and possibly more[;]" yet, the citation she provides

is to the ALJ's second hypothetical, *i.e.*, not, as one would expect, to Dr. Castillo's

actual opinion.  (ECF No. 20, PageID.1328; R. at 74.)  Second, Plaintiff claims that

"there was the evidence that one of the reasons the Plaintiff lost her last job, at

Covenant Hospital in October 2011, was the fact that she was missing too much

work, had exhausted her sick leave, was missing up to a day a week, and had a

breakdown[;]" yet, the citation she provides is to the examination of Plaintiff by

her attorney.  (ECF No. 20, PageID.1328, R. at 57.)  As previously noted,

Plaintiff's issues on appeal do not expressly challenge the ALJ's credibility

determination.  (ECF No. 18-1, PageID.1207-1208.)  The briefing is hardly adequate to the task at hand.

Finally, Plaintiff specifically cites Dr. Castillo's September 21, 2017 testimony about absenteeism, which itself includes references to her October 31, 2012 and May 15, 2013 medical source statements.  (ECF No. 20, PageID.1328-1329; R. at 325-326, 1021, 1029.)  Yet, at least the latter MSS was addressed by ALJ McKay in her March 22, 2014 opinion (R. at 89), and the ALJ's treatment of Dr. Castillo's opinion(s) from the relevant period (March 23, 2014 to December 31, 2015), has been addressed above and inadequately challenged.

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  January 27, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE